2006 UT App 517

**STATE of Utah, Plaintiff and Appellee,**

v.

**Tamara RHINEHART, Defendant and Appellant.**

No. 20050553–CA.

Court of Appeals of Utah.

Dec. 29, 2006.

David M. Perry, Perry Malmberg & Perry, Logan, for Appellant.

Mark L. Shurtleff, Attorney General, and Erin Riley, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges GREENWOOD, BILLINGS, and McHUGH.

GREENWOOD, Associate Presiding Judge:

¶ 1 Defendant Tamara Rhinehart was convicted after a jury trial of burglary, a second

degree felony, in violation of Utah Code section 76–6–202, *see* Utah Code Ann. § 76–6–202 (2003), and theft, a second degree felony, in violation of Utah Code section 76–6–404. *See id.* § 76–6–404 (2003). She appeals from the (1) denial of her motion to quash bindover, (2) overruling of her objection to the order of trials, and (3) overruling of her objection to the use of hearsay evidence at trial. We affirm.[1]

## BACKGROUND [2]

¶ 2 Sometime after June 5, 2003, Defendant and her boyfriend, Craig Nicholls, stole a safe belonging to Defendant's aunt, Sue Davis. Davis kept the safe, which contained approximately $6500, in her apartment. To accomplish the theft, Defendant lured Davis out of her home while Nicholls stole the safe. During roughly the same time period, Defendant told her hair dresser, Marne Christianson, that she and Nicholls stole a safe containing $5000, that Nicholls stole it from someone's house after Defendant had lured the owner out of the home, and that they dumped the safe in a parking lot after cracking it open. Defendant also told Jessica Goalen, a nanny who she employed, that she and Nicholls stole a safe containing a large sum of money, that the theft was "just like [the film] *The Italian Job*" in that it was "really slick ... [i]n and out," and that Defendant and Nicholls cracked the safe open and then left it in a field.

¶ 3 The facts surrounding the theft and burglary came to light while Defendant and Nicholls were being investigated for a related charge of murder. Nicholls pleaded guilty to the murder in exchange for a sentence of life without parole. The State agreed to drop any remaining charges against Nicholls, and he agreed to "fully cooperate with the State in their prosecution of [his] co-defendant, Tamara Rhinehart ... by truthfully disclosing all aspects of [their] planning and carrying out" the murder. During a subsequent police interview that was primarily focused on the murder charge, Nicholls briefly discussed his and Defendant's participation in the burglary and theft. Nicholls told police that he and Defendant devised a plan whereby Defendant would take Davis out to eat, and while they were gone, Nicholls would steal Davis's safe.

¶ 4 The police charged Defendant with burglary, theft, and murder. At Defendant's preliminary hearing on all of the charges, Nicholls invoked his Fifth Amendment right against self-incrimination and was therefore unavailable to testify. The State then presented into evidence the transcript of Nicholls's police interview as evidence of Defendant's role in the crimes charged. The State also introduced a sworn statement from Davis and a transcript of a telephone interview with Christianson. There was no other evidence introduced at the preliminary hearing to implicate Defendant in the burglary and theft charges.

¶ 5 Defendant was bound over on all charges and subsequently requested severance of the charges for trial. Defendant also moved to quash the bindover on grounds that hearsay was wrongly admitted at the preliminary hearing. The trial court agreed to sever the burglary and theft charges from the murder charge, but denied Defendant's motion to quash. Defendant also moved to have the burglary and theft trial held after the murder trial. However, that motion was denied.

¶ 6 During the burglary and theft trial, defense counsel asked the investigating officer, Detective Bennett, on cross-examination whether he spoke to anyone about the exis-

---

1. Defendant also raises claims regarding a motion for new trial based on newly discovered evidence. We do not address Defendant's claim that her motion for new trial should have been granted because it was inadequately briefed. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 313 (Utah 1998) ("It is well established that an appellate court will decline to consider an argument that a party has failed to adequately brief."). Likewise, we do not address Defendant's newly discovered evidence argument because Defendant fails to identify any newly discovered evidence or discuss how it would have advanced her defense at trial. *See id.*

2. "When reviewing a challenge to a criminal conviction, 'we recite the facts from the record ... in the light most favorable to the jury's verdict.'" *State v. Lee*, 2006 UT 5, ¶ 2, 128 P.3d 1179 (omission in original) (quoting *State v. Geukgeuzian*, 2004 UT 16, ¶ 2, 86 P.3d 742).

tence of the missing safe: "You never determined that there is another person on this planet that ever saw a safe in the possession of Sue Davis, correct?" Detective Bennett responded, "Correct." On re-direct examination, the prosecutor asked several follow up questions:

Q. Did you talk to Craig Nicholls about a safe?

A. Yes, I did.

. . . .

Q. Did he tell you anything that would lead you to believe whether or not Sue Davis had a safe?

A. Yes.

Q. And what was that?

A. Well, at the time he described the area that he had gone to to retrieve the safe.

Q. And what did he describe?

A. He described coming into the valley.... He described the Sear's store which is located down by Macey's at the south end of Logan.... He described that he was to go into a home because there was an aunt of Tam[a]ra Rhinehart who possessed a safe with some money in that safe. That he would go into that home to take that safe out while Tam[a]ra Rhinehart took the family members to lunch or dinner.

¶ 7 Defense counsel objected to Detective Bennett's response on grounds that it contained hearsay, but the trial court overruled the objection, accepting the State's argument that defense counsel had opened the door to the testimony. At the conclusion of the trial, the jury convicted Defendant on both counts. Defendant subsequently moved for a new trial. That motion was denied. Defendant now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 Defendant claims that the trial court should have granted her motion to quash the bindover because hearsay evidence was improperly permitted at the preliminary hearing. The determination of whether to bind a defendant over for trial generally involves a mixed question of law and fact, which requires this court to afford some deference to the trial court. *See State v. Virgin,*

2006 UT 29, ¶ 26, 137 P.3d 787. However, when a case presents only a question of law, namely whether hearsay used at the preliminary hearing was admissible under *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), or reliable under rule 1102 of the Utah Rules of Evidence, this court will review the bindover determination for correctness giving no deference to the trial court. *See State v. Graham,* 2006 UT 43, ¶ 16 n. 7, 143 P.3d 268.

¶ 9 Defendant also argues that the trial court erred in refusing to hold the murder trial before the burglary and theft trial. We review a claim regarding the administration of a trial court's docket for abuse of discretion. *See Walker Drug Co. v. LaSal Oil Co.,* 972 P.2d 1238, 1244 (Utah 1998) ("Rule 42(b) of the Utah Rules of Civil Procedure gives the trial court 'considerable discretion' to administer the business of its docket and determine how a trial should be conducted."); *Morton v. Continental Baking Co.,* 938 P.2d 271, 275 (Utah 1997) ("A trial judge is given a great deal of latitude in determining the most fair and efficient manner to conduct court business.").

¶ 10 Finally, Defendant argues that hearsay evidence should not have been allowed at trial because it was prejudicial and the trial court incorrectly ruled that the "door had been opened." "Our standard of review on the admissibility of hearsay evidence is complex, since the determination of admissibility 'often contains a number of rulings, each of which may require a different standard of review.'" *State v. Workman,* 2005 UT 66, ¶ 10, 122 P.3d 639 (quoting Norman H. Jackson, *Utah Standards of Appellate Review,* 12 Utah Bar J. 8, 38 (1999)). Legal questions regarding admissibility are reviewed for correctness, and questions of fact are reviewed for clear error. *See id.* And, "[f]inally, we review the district court's ruling on admissibility for abuse of discretion." *Id.*

## ANALYSIS

### I. Whether the Trial Court Erred in Denying Defendant's Motion to Quash Bindover

¶ 11 Defendant argues that the trial court should have granted her motion to quash the

bindover because the State presented inadmissible hearsay at the preliminary hearing, and without the hearsay, there would have been no evidence to support a finding of probable cause. *See State v. Virgin,* 2006 UT 29, ¶ 17, 137 P.3d 787 (holding that at a preliminary hearing, the State must establish probable cause with "evidence sufficient to support a reasonable belief that the defendant committed the charged crime"). Specifically, Defendant claims that hearsay should not have been allowed at her preliminary hearing because *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); the Sixth and Fourteenth Amendments to the United States Constitution, *see* U.S. Const. amend. VI, XIV; Article I Sections 12 and 13 of the Utah Constitution, *see* Utah Const. art. I, §§ 12–13; and "due process rights both federal and state in origin" provide criminal defendants with the right to confront and cross-examine the witnesses against them at preliminary hearings. In the alternative, Defendant argues that hearsay should not have been admitted at her preliminary hearing because it was unreliable and, therefore, inadmissible under Article I Section 12 of the state constitution or rule 1102 of the Utah Rules of Evidence. *See* Utah Const. art. I, § 12; Utah R. Evid. 1102.

### A. Whether *Crawford* Applies at Preliminary Hearings

■ ¶ 12 The Sixth Amendment to the Constitution states, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI. This provision, also known as the "Confrontation Clause," was recently the focus of the United States Supreme Court decision, *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). There, the Court held that testimonial statements by witnesses absent at trial may only be admitted if the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant. *See id.* at 59, 68, 124 S.Ct. 1354. Although the Supreme Court in *Crawford* provided an exhaustive discussion of the Confrontation Clause, in contrast to Defendant's argument, it never indicated that it

applies at preliminary hearings. *See id.* at 42–69, 124 S.Ct. 1354.

¶ 13 Moreover, the Supreme Court has previously explained that the Confrontation Clause provides a trial right, not a pre-trial right. For example, in *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), a plurality of the Court stated that "the right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." *Id.* at 52, 107 S.Ct. 989 (citing *California v. Green,* 399 U.S. 149, 157, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *Barber v. Page,* 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968)). And, in *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Court explained that cross-examination is "not essential for the probable cause determination" that is the focus of the preliminary hearing. *Id.* at 121, 95 S.Ct. 854; *see also State v. Pledger,* 896 P.2d 1226, 1228 n. 4 (Utah 1995) (interpreting *Gerstein,* 420 U.S. at 120–22, 95 S.Ct. 854). Although confrontation and cross-examination may enhance the reliability of the probable cause determination, the Supreme Court explained that "their value would be too slight to justify holding, as a matter of constitutional principle, that these formalities and safeguards designed for trial must also be employed in making the Fourth Amendment determination of probable cause." *Gerstein,* 420 U.S. at 123, 95 S.Ct. 854.

■ ¶ 14 Although Utah has not specifically addressed whether hearsay is admissible at preliminary hearings post-*Crawford,* other jurisdictions have, and they have reached the same conclusion that we do today. *See, e.g., People v. Felder,* 129 P.3d 1072, 1073 (Colo.Ct.App.2005) (concluding that the right to confrontation is a trial right, and "[n]othing in *Crawford* suggests that the Supreme Court intended to alter" this conclusion); *State v. Woinarowicz,* 720 N.W.2d 635, 641 (N.D.2006) ("[The] Sixth Amendment right to confrontation is a trial right, which does not apply to pretrial suppression hearings."). The Confrontation Clause pertains to a criminal defendant's right to confront and cross-examine the wit-

nesses against the defendant at trial; it does not afford the right to confront and cross-examine witnesses at a preliminary hearing, and *Crawford* does not alter the Court's previous holdings with respect to this matter. Consequently, we are not persuaded by Defendant's argument that *Crawford* requires application of the Confrontation Clause at preliminary hearings.[3]

### B. Whether State law Provides the Right to Confrontation at Preliminary Hearings

¶ 15 Defendant relies on *State v. Anderson*, 612 P.2d 778 (Utah 1980), for the proposition that the right to confrontation exists at preliminary hearings under state law. In *Anderson*, the Utah Supreme Court acknowledged the "critical character" of the preliminary hearing and thus held that the Confrontation Clause applies. *See id.* at 785–86. However, this decision was expressly abrogated first, by amendment to Article I, Section 12 of the Utah Constitution,[4] *see* Utah Const. art. I, § 12, and subsequently, by rule 1102 of the Utah Rules of Evidence.[5] See Utah R. Evid. 1102 advisory committee's note ("To the extent that *State v. Anderson* prohibited the use of hearsay at preliminary examinations, that case has been abrogated.").[6] Defendant argues that rule 1102 is invalid because *Crawford* supersedes the state's evidence rules-and that under *Crawford* she is entitled to cross-examine declarants at a preliminary hearing. However, as previously discussed, *Crawford* does not address preliminary hearings, and therefore, does not invalidate rule 1102.

### C. Whether the Testimony Introduced at the Preliminary Hearing was Unreliable

■ ¶ 16 Defendant further argues that Nicholls's testimony at the preliminary hearing, introduced via the transcript of his plea interview, was unreliable because even though it met the requirements of rule 1102(b)(8), it was offered by a coconspirator. In *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999), the Supreme Court explained that statements by accomplices that implicate criminal defendants are inherently unreliable. *See id.* at 131–34, 119 S.Ct. 1887. In light of *Lilly*, Defendant argues that "[r]ule 1102 is not and cannot ... be read as a list of sufficient conditions indicative of reliab[le] hearsay for the purposes of preliminary hearings." However, *Lilly* is inapplicable here.

¶ 17 Like *Crawford*, *Lilly* was concerned solely with the right to confrontation at trial; it did not address the admissibility of hearsay at the preliminary hearing stage. *See id.* at 122–36, 119 S.Ct. 1887. The prosecution in *Lilly* attempted to introduce a co-defendant's hearsay statements at trial without providing an opportunity for the defendant to cross-examine the declarant. *See id.* at 121, 119 S.Ct. 1887. Consequently, the Court analyzed whether the statements at issue fell within a firmly rooted hearsay exception, and whether they satisfied the "residual 'trustworthiness' test." *Id.* at 131–36, 119 S.Ct.

---

**3.** Our conclusion is strengthened by the fact that the Federal Rules of Evidence, which are constrained by the limits of the Constitution, *see* Fed.R.Evid. 802, expressly allow for the introduction of hearsay at preliminary hearings. *See id.* 1101(d) ("The rules [of evidence] do not apply [at] Preliminary Examinations in Criminal Cases.").

**4.** The 1994 amendment to Article I, Section 12, effective July 1, 1995, added the following language:

Nothing in this constitution shall preclude the use of reliable hearsay evidence as defined by statute or rule in whole or in part at any preliminary examination to determine probable cause at any pretrial proceeding with respect to release of the defendant if appropriate discovery is allowed as defined by statute or rule.

Utah Const. art. I, § 12.

**5.** Rule 1102 provides that hearsay evidence is admissible at the preliminary hearing as long as that evidence is reliable. *See* Utah R. Evid. 1102(a). The rule further explains that hearsay is reliable if it is "a statement of a declarant that is written, recorded, or transcribed verbatim ... under oath or affirmation; or ... pursuant to a notification to the declarant that a false statement made therein is punishable." *Id.* at 1102(b)(8).

**6.** The Supreme Court of Utah is constitutionally empowered to "adopt rules of procedure and evidence." Utah Const. art. I, § 4; *see also* Utah Code Ann. § 78–24–4(1) (2002).

1887. The Court made no references to the admissibility of the statements at the preliminary hearing stage, and Defendant fails to provide an argument for why *Lilly* should apply here. Therefore, we are not persuaded by Defendant's arguments concerning *Lilly*.

¶ 18 Furthermore, the trial court determined that the hearsay testimony admitted at the pretrial hearing met the reliability criteria of rule 1102. *See* Utah R. Evid. 1102(b)(8). We agree with that ruling because the statements were each "written, recorded or transcribed verbatim." *Id.*

## II. Whether the Trial Court Erred in Refusing to Reverse the Order of Trials

¶ 19 Defendant asserts that the trial court erred by proceeding with the burglary and theft trial before the murder trial, arguing that she was unfairly prejudiced. We disagree. Utah Code section 77–8a–1(4)(a) provides,

> If the court finds a defendant or the prosecution is prejudiced by a joinder of offenses or defendants in an indictment or information or by a joinder for trial together, the court shall order an election of separate trials of separate counts, grant a severance of defendants, or provide other relief as justice requires.

Utah Code Ann. § 77–8a–1(4)(a) (2003). In the event that a severance is granted, the statute does not address the order of trials. To the contrary, our supreme court has noted that a trial court has " 'considerable discretion' to administer the business of its docket and determine how a trial should be conducted.' " *Walker Drug Co. v. La Sal Oil Co.*, 972 P.2d 1238, 1244 (Utah 1998) (citation omitted); *see also Morton v. Continental Baking Co.*, 938 P.2d 271, 275 (Utah 1997) ("A trial judge is given a great deal of latitude in determining the most fair and efficient manner to conduct court business."). Consequently, when a trial court grants a criminal defendant's request to sever charges, the trial court retains considerable discretion to determine the order of trials, and that decision will not be overturned absent an abuse of discretion.

¶ 20 However, the question of whether the trial court abused its discretion in scheduling trials in a particular order after severance is an issue of first impression for our courts. The few jurisdictions analyzing the same question have used a balancing test to assess the competing interests of the State and the criminal defendant. *See, e.g., State v. Walland*, 555 So.2d 478, 481–82 (La.Ct.App.1989) (balancing the defendant's right to present a defense with the State's right to determine the order of trials); *State v. Nelson*, 255 N.J.Super. 270, 604 A.2d 999, 1001 (App.Div. 1992) (holding that when two unrelated crimes are charged, evidence from one trial could potentially be used in a subsequent murder trial, and the defendant requests the murder trial be tried first, "the court is required to perform a balancing test and determine the prejudice to the parties in interest by the requested delay"); *State v. Scovil*, 159 N.J.Super. 194, 387 A.2d 413, 416 (App.Div.1978) ("In ordering the [docket after severance] there must inevitably be a balancing of interests."); *People v. Garnes*, 134 Misc.2d 39, 510 N.Y.S.2d 409, 412 (1986) (holding that even though prosecutor has broad discretion to determine "prosecutorial priorities . . . priority should be given, among others, to cases where there is a critical issue involving guilt or innocence, or the possible loss of witnesses to the prosecution or the defense"). *But see Coe v. State*, 174 Ark. 1103, 298 S.W. 356, 356 (1927) ("Where defendants jointly indicted sever, they stand in court as they would had they been indicted separately. If one is not ready for trial, or is not tried when his case is reached, the next in order of succession stands for trial like all other cases upon the criminal docket of the court."). We believe that this balancing test is salutary, and suggest that trial courts engage in this type of inquiry when determining the order of trials after severance.

¶ 21 In this instance, although the trial court did not explicitly engage in a balancing test, both parties fully briefed their respective interests and the court clearly considered those arguments. Therefore, we can legitimately assume that the trial court engaged in a process of balancing the parties' interests. Moreover, we conclude that, after

balancing those interests, it was not an abuse of discretion for the court to proceed with the burglary and theft case prior to the murder case.

¶ 22 First, Defendant argued that if the burglary and theft case were tried first, her right to confront and cross-examine the witnesses against her would be limited because she would be unable to expose the fact that the State's witness, Nicholls, had received immunity in exchange for his testimony. The State, however, responded that Nicholls was given immunity solely for his cooperation in the murder case, not with regard to the burglary and theft case.

¶ 23 Second, Defendant argued that she would be prejudiced by the order of trials because the jurors in the burglary and theft case could potentially learn of and be prejudiced by their knowledge of the pending murder charge. However, Defendant filed a motion in limine to suppress all statements related to the murder charge, and although it is unclear from the record whether the court granted that motion, the murder charge was never mentioned during the burglary and theft trial. Moreover, as the State points out, Defendant's position was inconsistent. On one hand, she wanted to refer to the murder charge in an effort to impeach the State's witnesses, and on the other hand, she wanted to shield the jury from learning · of the murder charge so as not to inflame prejudice.

¶ 24 Defendant next argued that if convicted of the burglary and theft charges, the State could use Defendant's convictions as aggravating circumstances in her murder trial. Although this argument may have validity, it does not hinder Defendant's right to a fair trial in the burglary and theft case. *See Walland,* 555 So.2d at 480–81 (examining whether the order of trials would prevent the defendant from presenting exculpatory evidence in the first trial). The trial court had no reason to assume that Defendant would in fact be convicted of the crimes charged. And finally, the State was prepared to proceed with the burglary and theft case but was not then prepared to proceed with the murder case, and urged the court to consider the State's primary goal of expediting cases.

¶ 25 After examining the arguments presented to and considered by the trial court, we conclude that it was within the trial court's discretion to proceed with the burglary and theft case prior to the murder case. Our conclusion is further bolstered by the fact that the trial court was in the best position to assess the strength of the parties' arguments. *See Morton v. Continental Baking Co.,* 938 P.2d 271, 275 (Utah 1997) ("The trial judge is in the best position to evaluate the status of his cases, as well as the attitudes, motives, and credibility of the parties."); *see also Golsun v. United States,* 592 A.2d 1054, 1058 (D.C.1991) ("We accord the trial court substantial deference in exercising its discretion because of the court's familiarity with the proceedings, its observations of the witnesses and lawyers, and its superior opportunity to get a feel for the case.").

### III. Whether the Trial Court Erred by Allowing Hearsay Statements at Trial

¶ 26 Defendant argues that the trial court erred when it allowed Detective Bennett to present hearsay testimony at trial based on its conclusion that Defendant had opened the door to the testimony.[7] Although "'it is proper to allow ... any testimony which would tend to dispute, explain or minimize the effect of evidence that has been given by one's opponent,'" *State v. Harper,* 2006 UT App 178, ¶ 18, 136 P.3d 1261 (quoting *State v. Sanders,* 27 Utah 2d 354, 496 P.2d 270, 274 (1972)), the hearsay testimony at issue in this case went beyond explaining

---

7. Defendant further argues that Detective Bennett's testimony about statements made by Nicholls was inadmissible in violation of *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). However, the Supreme Court made clear in *Crawford* that there is no Confrontation Clause violation when the declarant appears for cross-examination at trial. "The Confrontation Clause places no constraints at all on the use of ... prior testimonial statements.... The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Id.* at 59 n. 9, 124 S.Ct. 1354 (citations omitted). Because Nicholls testified at trial and was available for cross-examination, and did in fact testify regarding his statements to Detective Bennett, Defendant's *Crawford* argument fails.

Detective Bennett's responses to defense counsel's questions, and was therefore inadmissible.

■ ¶ 27 On cross-examination, defense counsel asked Detective Bennett if he had spoken to anyone about the existence of the safe, to which he responded in the negative. On re-direct, the State asked Detective Bennett whether he had spoken to Nicholls about the safe. Upon answering affirmatively, the State asked Detective Bennett what Nicholls had said. At this point, the State's questioning went beyond the scope of cross-examination, and Detective Bennett's remaining testimony constituted inadmissible hearsay. However, we determine that the admission of Detective Bennett's testimony resulted in harmless error.

■ ¶ 28 "Notwithstanding error by the trial court, we will not reverse a conviction if we find that the error was harmless." *State v. Calliham*, 2002 UT 86, ¶ 45, 55 P.3d 573. "An error is harmless when it is 'sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of proceedings.'" *State v. Loose*, 2000 UT 11, ¶ 10 n. 1, 994 P.2d 1237 (quoting *State v. Hamilton*, 827 P.2d 232, 240 (Utah 1992)). Here, we maintain confidence in the verdict notwithstanding the improper admission of Detective Bennett's testimony.

■ ¶ 29 First, Davis testified about the existence of the safe and its disappearance. Second, Christianson testified that Defendant told her she had stolen a safe, that it contained approximately $5000, and that Defendant had lured the safe owner out of the house so Nicholls could steal the safe. Third, Goalen testified that Defendant told her that she had come into some money in the same manner the actors did in the film *The Italian Job*. Goalen further testified that *The Italian Job*, which Defendant and Goalen had seen together, was about a group of thieves that stole a safe. Finally, Goalen testified that Defendant said she had received some money from Nicholls, and that

she had to drive by and pick up Nicholls after he stole a safe. Because this testimony, standing alone, was sufficient to establish the existence of the stolen safe, the admission of Detective Bennett's testimony was harmless error.

## CONCLUSION

¶ 30 We address three rulings challenged by Defendant on appeal: denial of her motion to quash bindover, overruling of her objection to the order of trials, and overruling of her objection to the use of hearsay evidence at trial.

¶ 31 First, regarding the bindover order, because *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), does not apply at preliminary hearings, the State was entitled to, and did in fact, introduce reliable hearsay testimony in compliance with rule 1102 of the Utah Rules of Evidence. Use of hearsay at preliminary hearings is not prohibited by either the United State Constitution's Confrontation Clause or Article I, Section 12 of the Utah Constitution. Consequently, it was not error for the trial court to deny Defendant's motion to quash bindover. Second, the trial court has broad discretion to determine the order of trials after granting a request for severance, and in this instance, the trial court did not abuse that discretion. And finally, we hold that the trial court erred in admitting Detective Bennett's hearsay evidence at trial; however, the error was harmless. Accordingly, we affirm Defendant's convictions.

¶ 32 WE CONCUR: JUDITH M. BILLINGS and CAROLYN B. McHUGH, Judges.