2009 UT 58

**STATE of Utah, Plaintiff and Appellee,**

v.

**Travis Dee TIMMERMAN, Defendant and Appellant.**

No. 20080206.

Supreme Court of Utah.

Sept. 4, 2009.

Mark L. Shurtleff, Att'y Gen., J. Frederic Voros, Jr., Laura B. Dupaix, Asst. Att'ys Gen., for plaintiff.

Richard G. Uday, Jason A. Schatz, Salt Lake City, for defendant.

DURHAM, Chief Justice:

## INTRODUCTION

¶1 Travis Timmerman was charged with attempted rape, forcible sexual abuse, and assault. At the preliminary hearing, the victim, Mrs. Timmerman, invoked her spousal privilege not to testify against her husband. The State then introduced into evidence Mrs. Timmerman's previous statements to the police and to a sexual assault nurse. With those statements, the magistrate bound Mr. Timmerman over for trial. Mr. Timmerman subsequently filed a motion to quash the bindover. The district court denied the motion and held that the admission of Mrs. Timmerman's statements did not violate Mr. Timmerman's constitutional rights or Mrs. Timmerman's spousal testimonial privilege. Mr. Timmerman now appeals the district court's denial of his motion. We are asked to consider whether the Confrontation Clauses of the United States Constitution and Utah Constitution apply to preliminary hearings and whether the spousal testimonial privilege embodied in the Utah Constitution applies to a spouse's voluntary, out-of-court statements. We affirm the trial court.

## BACKGROUND

¶2 During the early morning hours of June 30, 2007, the Timmermans' neighbor heard a woman screaming "Stop it!" and "Help me!" The neighbor thought the screams came from the Timmermans' house. Around 7:00 a.m., the neighbor notified the police. Officer McLelland responded and spoke with Mrs. Timmerman. During their conversation, Officer McLelland observed bruises on her arms and face. He asked Mrs. Timmerman to fill out a witness statement. In her three-page statement, Mrs. Timmerman wrote that Mr. Timmerman repeatedly hit her and tried to force her to have anal and vaginal intercourse.

¶3 Another police officer, Detective Harding, interviewed Mrs. Timmerman and asked her to submit to a sexual assault examination at the hospital. When Mrs. Timmerman arrived at the hospital, a sexual assault nurse examined her and filled out a Sexual Assault Nurse Examination (SANE) report. In the report, the nurse cataloged Mrs. Timmerman's bruises and her statements that Mr. Timmerman hit her and tried to have forced sex with her.

¶4 Mr. Timmerman was charged with attempted rape, a first-degree felony; forcible sexual abuse, a second-degree felony; and assault, a class B misdemeanor.[1] At the preliminary hearing, the State called Mrs. Timmerman as a witness, but she invoked her spousal privilege not to testify against her husband. Instead, Officer McLelland and Detective Harding testified for the State, and the State introduced Mrs. Timmerman's witness statement and SANE report. Mr. Timmerman objected to the admission of the statement and the report on the grounds that they violated Mrs. Timmerman's spousal

---

1. Mr. Timmerman was also charged with commission of domestic violence in the presence of a child, but the magistrate dismissed that charge at the preliminary hearing.

privilege and Mr. Timmerman's confrontation rights under the federal and state constitutions. The magistrate admitted both documents and bound Mr. Timmerman over for trial.

¶ 5 In his motion to quash the bindover before the district court, Mr. Timmerman argued that his confrontation rights under the federal and state constitutions were violated because he could not cross-examine Mrs. Timmerman at the preliminary hearing regarding her out-of-court statements. He also argued that the magistrate had ignored Mrs. Timmerman's spousal privilege when he admitted her out-of-court statements into evidence. Without Mrs. Timmerman's statements, there was insufficient evidence to bind Mr. Timmerman over for trial on the attempted rape charge. The district court held that confrontation rights under the federal and state constitutions do not apply to preliminary hearings and that out-of-court statements made by spouses to third parties are not excluded under the spousal testimonial privilege.

¶ 6 Mr. Timmerman subsequently filed this interlocutory appeal. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(h) (2008).

## STANDARD OF REVIEW

¶ 7 Interpretations of federal and state constitutions are questions of law. *Grand County v. Emery County*, 2002 UT 57, ¶ 6, 52 P.3d 1148. When the review of a district court's denial of a motion to quash a bindover implicates questions of law, we review for correctness, giving no deference to the district court's legal conclusions. *See State v. Rhinehart*, 2006 UT App 517, ¶ 8, 153 P.3d 830.

## ANALYSIS

¶ 8 Mr. Timmerman argues that the right to confrontation in preliminary hearings is guaranteed by the Sixth Amendment of the United States Constitution and by article 1, section 12 of the Utah Constitution. He also argues that the spousal testimonial privilege found in the Utah Constitution prevents the use of out-of-court, voluntary statements.

## I. THE CONFRONTATION CLAUSES OF THE UNITED STATES CONSTITUTION AND THE UTAH CONSTITUTION DO NOT APPLY TO PRELIMINARY HEARINGS

### A. The Sixth Amendment Does Not Require Confrontation at State Preliminary Hearings

¶ 9 The Sixth Amendment of the United States Constitution, which applies to both federal and state criminal prosecutions, grants the accused "the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. *See Crawford v. Washington*, 541 U.S. 36, 40, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Recently, the Supreme Court held in *Crawford* that the Sixth Amendment right to confrontation applies to out-of-court testimony admitted into evidence at trial. 541 U.S. at 67, 124 S.Ct. 1354. A party can only introduce a witness's testimonial statements into evidence if the witness is unavailable to testify at trial and the opposing party had a prior opportunity to cross-examine. *Id.* at 68, 124 S.Ct. 1354. To reach this holding, the Court traced the historical development of confrontation rights. The Court referenced confrontation rights in pretrial proceedings in its comprehensive historical analysis, but the narrow issue before the Court was whether the accused's confrontation rights were violated at trial. *Id.* at 38, 124 S.Ct. 1354. The Court resolved the issue by defining the scope of confrontation rights at trial. *Id.* at 67–68, 124 S.Ct. 1354. Mr. Timmerman now argues that *Crawford* extends to preliminary hearings. We disagree.

¶ 10 *Crawford's* holding does not extend to preliminary hearings in state proceedings. In *State v. Rhinehart*, the court of appeals held that Sixth Amendment confrontation rights apply only to trials and not to Utah's preliminary hearings. 2006 UT App 517, ¶ 14, 153 P.3d 830. It reasoned that *Crawford's* "exhaustive discussion of the Confrontation Clause ... never indicated that [the clause] applies at preliminary hearings." *Id.* ¶ 12. Also, the court of appeals emphasized

that the discussion in *Crawford* never expressly stated that the Supreme Court overruled its precedent limiting Sixth Amendment confrontation rights to trial. *Id.* ¶ 13; *see also Pennsylvania v. Ritchie,* 480 U.S. 39, 52, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (plurality opinion) ("The opinions of this Court show that the right to confrontation is a *trial* right...."); *California v. Green,* 399 U.S. 149, 157, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) ("[I]t is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause."); *Barber v. Page,* 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968) ("The right to confrontation is basically a trial right."). Additionally, the court of appeals relied on the Supreme Court's decision in *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), to reason that allowing confrontation rights at preliminary hearings would not significantly increase the reliability of the probable cause determination. *Rhinehart,* 2006 UT App 517, ¶ 13, 153 P.3d 830.

¶ 11 Mr. Timmerman argues that the decision in *Rhinehart* was incorrect and should be reversed. He faults the court of appeals for its reliance on two Supreme Court cases: *Pennsylvania v. Ritchie,* and *Gerstein v. Pugh.* Specifically, Mr. Timmerman argues that the court of appeals improperly relied on *Ritchie* because it was a plurality opinion. However, in citing to *Ritchie,* the court of appeals also cited to two majority opinions, *Barber v. Page* and *California v. Green,* that explicitly limited confrontation rights to trial. We agree with the court of appeals that *Barber, Green,* and *Ritchie* establish Supreme Court precedent confining the Sixth Amendment Confrontation Clause to trial.

■ ¶ 12 Mr. Timmerman also asserts that the court of appeals improperly relied on *Gerstein.* He argues first that the case is not on point, but that if it is on point, language therein supports full rights of confrontation at preliminary hearings because the opinion contemplates a difference between the nature of a probable cause determination at an arraignment as opposed to a preliminary hearing. *See* 420 U.S. at 119–20, 95 S.Ct. 854. We disagree with Mr. Timmer-

man's interpretation of *Gerstein* for three reasons. First, *Gerstein* failed to clarify the relevant differences between an arraignment and a preliminary hearing. Importantly, the Court did not discuss whether the difference requires an accused to have confrontation rights at a preliminary hearing. At most, the Court observed only that "adversary procedures are customarily employed" in preliminary hearings; it did not go any further to require that such procedures be used. *Id.* at 120, 95 S.Ct. 854. Second, our recent case law establishes that there is no difference between the probable cause determinations in arraignments and in preliminary hearings. *See, e.g., State v. Virgin,* 2006 UT 29, ¶ 18, 137 P.3d 787 ("[T]he probable cause that the prosecution must establish in a preliminary hearing ... is the same as the probable cause that the prosecution must show to obtain an arrest warrant."); *State v. Clark,* 2001 UT 9, ¶ 16, 20 P.3d 300 ("[W]e see no principled basis for attempting to maintain a distinction between the arrest warrant probable cause standard and the preliminary hearing probable cause standard.... Therefore, at both the arrest warrant and the preliminary hearing stages, the prosecution must present sufficient evidence to support a reasonable belief that an offense has been committed and that the defendant committed it."). And third, preliminary hearings are pretrial procedures unique to and varied within the states; no such procedure is required by the United States Constitution. The Supreme Court emphasized this point in *Gerstein:* "[S]tate systems of criminal procedure vary widely.... [W]e recognize the desirability of flexibility and experimentation by the States." 420 U.S. at 123, 95 S.Ct. 854. In fact, a state could eliminate preliminary hearings entirely and not infringe on federal constitutional rights. *Gerstein's* dicta and our case law therefore do not support Mr. Timmerman's proposition that confrontation rights apply at preliminary hearings.

■ ¶ 13 Accordingly, we hold that the federal Confrontation Clause does not apply to preliminary hearings. In so doing, we note that a substantial number of jurisdictions have reached the same conclusion.[2]

## B. The Right to Confront Witnesses at a Preliminary Hearing No Longer Exists Because of the Amendment to Article 1, Section 12 of the Utah Constitution

¶ 14 Pursuant to article I, section 12 of the Utah Constitution, the accused has the right to "be confronted by the witnesses against him." In 1980, this court analyzed the application of Utah's Confrontation Clause to preliminary hearings and held that "a strict reading of the language of Section 12 would provide the accused the entire panoply of guaranteed rights at the preliminary examination." *State v. Anderson*, 612 P.2d 778, 782 (Utah 1980). In 1995, however, article I, section 12 was amended. The amendment narrowed the scope of Utah's Confrontation Clause by adding a second paragraph:

> Nothing in this constitution shall preclude the use of reliable hearsay evidence as defined by statute or rule in whole or in part at any preliminary examination to determine probable cause or at any pretrial proceeding with respect to release of the defendant if appropriate discovery is allowed as defined by statute or rule.

Utah Const. art. I, § 12. Rule 1102(a) of the Utah Rules of Evidence codified the amendment: "Reliable hearsay is admissible at criminal preliminary examinations." Mr. Timmerman, nonetheless, argues that confrontation rights should apply at preliminary hearings because of the continuing viability of *Anderson* and the historical application of confrontation rights to preliminary hearings prior to the constitutional amendment.

¶ 15 The plain language of the amendment expressly allows reliable hearsay in preliminary hearings. By allowing hearsay, the amendment clearly removed confrontation rights from the preliminary hearing stage and overruled *Anderson's* holding on this point. The Advisory Committee note to Utah Rule of Evidence 1102 acknowledges as much: "To the extent that *State v. Anderson* prohibited the use of hearsay evidence at preliminary examinations, that case has been abrogated." (Citations omitted). Although we have recently cited to *Anderson*, these references have been for the proposition that the purpose of a preliminary hearing is to ferret out groundless claims. *See Virgin*, 2006 UT 29, ¶ 20, 137 P.3d 787; *Clark*, 2001 UT 9, ¶ 10, 20 P.3d 300. Such references cannot resurrect a holding that has been abrogated by a constitutional amendment.

¶ 16 In sum, we hold that the plain language of the 1995 amendment to article I, section 12 of the Utah Constitution removed

---

2. *See Whitman v. Superior Court*, 54 Cal.3d 1063, 2 Cal.Rptr.2d 160, 820 P.2d 262, 270 (1991) ("[I]t is doubtful that the federal confrontation clause operates to bar hearsay evidence offered *at a preliminary hearing* held to determine whether probable cause exists to hold the defendant for trial."); *People v. Felder*, 129 P.3d 1072, 1074 (Colo.Ct.App.2005) ("Indeed, had the Court intended the rule of *Crawford* to apply at the pretrial stage, it would have revisited its prior decisions refusing to recognize a Sixth Amendment right of pretrial confrontation."); *Gresham v. Edwards*, 281 Ga. 881, 644 S.E.2d 122, 124 (2007) ("[There is] no indication in *Crawford* of a change from the Court's previous statements that the right of confrontation is a trial right...."); *State v. Sherry*, 233 Kan. 920, 667 P.2d 367, 376 (1983) ("There is no constitutional right to allow the accused to confront witnesses against him at the preliminary hearing."); *Sheriff v. Witzenburg*, 122 Nev. 1056, 145 P.3d 1002, 1003 (2006) ("We conclude that the Sixth Amendment Confrontation Clause and *Crawford* do not apply at a preliminary examination."); *State v. Rivera*, 144 N.M. 836, 192 P.3d 1213, 1218 (2008) (concluding that the Confrontation Clause does not apply to pretrial suppression hearings); *People v. Brink*, 31 A.D.3d 1139, 818 N.Y.S.2d 374, 374 (N.Y.App.Div.2006) ("We reject the contention of defendant that *Crawford v. Washington* applies to his pretrial suppression hearing and that reversal is required because his right of confrontation was violated at that hearing.") (citations omitted); *State v. Woinarowicz*, 720 N.W.2d 635, 641 (N.D.2006) ("The Sixth Amendment right to confrontation is a trial right, which does not apply to pretrial suppression hearings."); *Commonwealth v. Tyler*, 402 Pa.Super. 429, 587 A.2d 326, 328 (1991) ("[T]he right to confrontation is a trial right."); *State v. Jones*, 273 S.C. 723, 259 S.E.2d 120, 122 (1979) ("Hearsay testimony does not render a preliminary hearing unlawful."); *Vanmeter v. State*, 165 S.W.3d 68, 74 (Tex.Crim.App. 2005) ("We have carefully read *Crawford* for any signal the Supreme Court intended its holding to apply at pretrial suppression hearings and have found nothing to signal such an intention."); *State v. Padilla*, 110 Wis.2d 414, 329 N.W.2d 263, 268 (Ct.App.1982) ("Of course, there is no constitutional right to confront witnesses at a preliminary examination.").

the constraints of Utah's Confrontation Clause from preliminary hearings. Admission of evidence at preliminary hearings is exclusively governed by the reliable hearsay language in the Utah Constitution and rule 1102 of the Utah Rules of Evidence.[3]

## II. THE TRIAL COURT PROPERLY DENIED THE MOTION TO QUASH BECAUSE THE CONSTITUTIONAL SPOUSAL TESTIMONIAL PRIVILEGE APPLIES ONLY TO COMPELLED, IN–COURT TESTIMONY

¶ 17 Mr. Timmerman argues that the trial court erred when it allowed Mrs. Timmerman's out-of-court statements into evidence even though Mrs. Timmerman invoked her spousal privilege not to testify against her husband. Utah recognizes two different spousal privileges: the spousal testimonial privilege and the spousal communications privilege. The spousal testimonial privilege is defined in article I, section 12 of the Utah Constitution: "[A] wife shall not be compelled to testify against her husband, nor a husband against his wife." The Utah Rules of Evidence codifies the privilege in rule 502(a). In contrast, the spousal communications privilege, as codified in Utah Code section 78B–1–137 and Rule 502(b) of the Utah Rules of Evidence, protects confidential communications between spouses during their marriage. However, the accused spouse cannot invoke the spousal communications privilege if the accused spouse is charged with a crime. Utah R. Evid. 502(b)(4)(C). Mr. Timmerman argues that the privileges were violated, but since Mr. Timmerman is accused of a crime against his spouse, he cannot invoke the spousal communications privilege. See Utah R. Evid. 502(b)(4)(C)(i). Hence, only the spousal testimonial privilege is at issue here.

¶ 18 Mr. Timmerman argues that Mrs. Timmerman's out-of-court statements were improperly admitted after she invoked her spousal testimonial privilege. Mr. Timmerman relies on the following language from this court's decision in *State v. Carter*: "The State is free to interrogate and receive information from a witness spouse on any matter, including confidential communications, so long as the witness spouse's statement is not introduced into evidence at trial over the objections of the accused spouse." 888 P.2d 629, 639 (Utah 1994). But Mr. Timmerman improperly relies on *Carter*. This court construed the spousal privilege in *Carter* as it existed in Utah Code section 78–24–8(1). At that time, this court noted that *Carter* was limited to cases implicating that statute and did "not determine the nature or scope of the marital privilege embodied in superseding rules 502 and 507" of the Utah Rules of Evidence because Carter had been charged with the crime before the rules came into effect. 888 P.2d at 638 n. 10. Furthermore, the language of the superseded statute prevented spouses only from being "examined as to any *communication* made by one to the other during the marriage." Utah Code Ann. § 78–24–8(1) (1985) (emphasis added). This superseded statute codified the spousal communications privilege, not the spousal testimonial privilege at issue here. Because *Carter* is based on an outdated statute and concerns the spousal communications privilege, it is not determinative in this case.

¶ 19 Article I, section 12 of the Utah Constitution provides, "[A] wife shall not be compelled to testify against her husband." In examining the language of the privilege, we recognize that a privilege should be "strictly construed in accordance with its object," *Jackson v. Kennecott Copper Corp.*, 27 Utah 2d 310, 495 P.2d 1254, 1257 (1972), because of its "undesirable effect of

---

3. We also reject Mr. Timmerman's argument that hearsay, in order to be reliable, must be subject to cross-examination. His argument hinges on *Crawford's* discussion of testing reliability by cross-examination. However, *Crawford* discusses reliability in the context of a witness's statement introduced at trial being subjected to cross-examination at some point. *Crawford v. Washington*, 541 U.S. 36, 68–69, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). If we were to require hear-

say at preliminary hearings to be subject to cross-examination, we would essentially remove the ability to introduce hearsay and negate the 1995 constitutional amendment expressly allowing hearsay. Instead, hearsay must be reliable as defined by rule 1102 of the Utah Rules of Evidence. Mr. Timmerman has not challenged the reliability of the witness statement or the SANE report, so we do not address reliability here.

excluding relevant evidence." *Munson v. Chamberlain,* 2007 UT 91, ¶ 14, 173 P.3d 848. Because a privilege withholds "relevant information from the factfinder, it applies only where necessary to achieve its purpose." *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).

■ ¶ 20 The purpose of the spousal testimonial privilege is to foster "the harmony and sanctity of the marriage relationship." *Trammel v. United States,* 445 U.S. 40, 44, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). If spouses were forced to testify against each other, then "the testifying spouse would be placed in the unenviable position of either committing perjury or testifying to matters that are detrimental to his or her spouse, which could clearly lead to marital strife." *State v. Robertson,* 932 P.2d 1219, 1227 (Utah 1997), *overruled on other grounds by State v. Weeks,* 2002 UT 98, ¶ 25 n. 11, 61 P.3d 1000.

■ ¶ 21 Construing the privilege strictly, according to its plain language and in light of its purpose, we interpret the spousal testimonial privilege to apply only to compelled testimony, or in other words, involuntary, in-court testimony. We believe this narrow interpretation of the privilege will not serve to exclude relevant testimony or extend the privilege beyond its narrow purpose. Further, admitting an out-of-court statement into evidence does not force one spouse to testify against the other or tempt the testifying spouse to commit perjury.

¶ 22 Criticism of the spousal testimonial privilege further bolsters this narrow interpretation. The privilege enables "abusers to silence their victims" and makes the testifying spouse "vulnerable to coercion from the defendant-spouse and his lawyer." Amanda H. Frost, *Updating the Marital Privileges: A Witness–Centered Rationale,* 14 Wis. Women's L.J. 1, 34 (1999). Similarly, the Advisory Committee of the Utah Rules of Evidence is convinced that the justifications for the spousal testimonial privilege are in-

sufficient: "[The privilege] does not promote marital felicity, is based on the outmoded concept that the husband and wife are one, and causes suppression of relevant evidence." Utah R. Evid. 502 advisory comm. note. The Advisory Committee recommends that only the spousal communications privilege be preserved and the spousal testimonial privilege be repealed. However, such a change is dependent on a constitutional amendment to article I, section 12 that would remove the spousal testimonial privilege.

¶ 23 In this case, the introduction of Mrs. Timmerman's statements into evidence at the preliminary hearing did not violate her spousal testimonial privilege, which protects a spouse from giving involuntary, in-court statements. Mrs. Timmerman was not forced to testify at the preliminary hearing. She invoked her privilege and was dismissed from the witness stand. In lieu of her in-court testimony, the State introduced Mrs. Timmerman's witness statement and her statements in the SANE report. Mrs. Timmerman made those statements voluntarily. She was not forced to attend a sexual assault examination or write a witness statement. Because the statements were neither compelled nor in-court, the spousal testimonial privilege does not apply.

¶ 24 We also note that barring the statements would not comport with the justifications for the privilege. Whatever degree of marital harmony that previously existed between the Timmermans was most likely absent when Mrs. Timmerman voluntarily gave her statements to the police and to the sexual assault nurse. Blocking her statements from admission into evidence at the preliminary hearing would promote excluding relevant evidence more than it would promote marital harmony. Furthermore, Mrs. Timmerman was not placed in a position where she had to choose either to perjure herself or harm her husband because she was not forced to testify in court.[4]

4. Although out-of-court, voluntary statements may be used at a preliminary hearing despite the invocation of the spousal testimonial privilege, we recognize that those same statements may conflict with the Confrontation Clauses of both the federal and state constitutions if introduced at trial; in such cases, the statements could only be admitted if the declarant was unavailable and the defendant had a prior opportunity to cross-examine. *See Crawford,* 541 U.S. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177.

¶ 25 Because the spousal testimonial privilege does not apply to the voluntary, out-of-court statements given to the police and to the sexual assault nurse, the trial court properly held that the spousal testimonial privilege was not violated and denied the motion to quash the bindover.[5] We therefore affirm.

¶ 26 Associate Chief Justice DURRANT, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM'S opinion.

---

5. Mr. Timmerman also argues in two paragraphs that the witness statement and the SANE report lacked proper foundation. We decline to address the issue because it was inadequately briefed. *See Loveland v. Orem City Corp.,* 746 P.2d 763, 770 (Utah 1987). An issue is inadequately briefed if the argument "merely contains 'bald citations to authority [without] development of that authority and reasoned analysis based on that authority.'" *Smith v. Four Corners Mental Health Ctr., Inc.,* 2003 UT 23, ¶ 46, 70 P.3d 904 (alteration in original) (quoting *State v. Thomas,* 961 P.2d 299, 305 (Utah 1998)). Here, Mr. Timmerman included no citations to authority to support his claim.