**2021 UT 8**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Petitioner,*

*v.*

KOAK PAL BIEL
*Respondent.*

No. 20191055
Heard November 9, 2020
Filed April 1, 2021

On Appeal of Interlocutory Order

Third District, Salt Lake
The Honorable James T. Blanch
No. 181908113

Attorneys:

Sean D. Reyes, Att'y Gen., John J. Nielsen, Asst. Solic. Gen.,
Salt Lake City, for petitioner

Sarah J. Carlquist, Salt Lake City, for respondent

JUSTICE PEARCE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PETERSEN joined.

JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1 One night while watching television in her home, Jawnie Wey was struck and killed by a bullet meant for her nephew. A gunman sitting in a Mercedes outside of her home fired the fatal shot. Four people were in the Mercedes that night. When questioned, two of them identified Koak Biel as the gunman. Both witnesses later recanted. The State wanted to call the two recanting witnesses to testify. If they stuck with the revised versions of their accounts, the State planned to impeach them with the first version of their story: Biel pulled the trigger.

¶2 Biel objected. He argued that the Utah Rules of Evidence do not permit the State to call a witness for the purpose of eliciting testimony harmful to the State's case with the hope of then impeaching that witness with inconsistent, unsworn statements. The district court agreed with Biel and entered an order preventing the State from calling the witnesses. The State seeks interlocutory review of that order. We reverse the district court.

## BACKGROUND

¶3 The night she was killed, Jawnie Wey was watching television in her Taylorsville home, her back to a bay window.[1] Wey's thirteen-year-old daughter was seated next to her. Seven shots were fired at her home. One shot struck Wey in the back of her head. Wey's daughter held a towel to her mother's head to stop the bleeding, but Wey died a few days later. The bullet that took Wey's life was intended for her nephew, Luis Cruz.

¶4 The police soon arrived on the scene. Witnesses reported that a Mercedes had circled the neighborhood, stopped, and that shots had been fired from the car. The police eventually identified the car's four occupants: Euziel De La Torre, Giek Kuajian,[2] Simon Mina,[3] and Koak Biel. Officers interviewed each of them.

¶5 When questioned, De La Torre admitted he drove to the house with the others. He said Kuajian was in the front passenger seat. Mina sat behind Kuajian in the passenger-side rear seat. And Biel was in the driver-side rear seat behind De La Torre. De La Torre said that the shots fired at the house came from behind him. When the police spoke with Kuajian and Mina, they corroborated De La Torre's story.

---

[1] We recite these facts to explain the district court's ruling. But we emphasize that no trial has occurred, and these allegations remain allegations.

[2] This last name is spelled differently in different parts of the record. Biel spelled it "Kuajeian" during a police interview, and one of the prosecutors once spelled it "Kuajiane." We use the spelling that is most common in the record and the one the parties used in their briefs.

[3] Mina is sometimes spelled "Mena" in the record. We use "Mina" because that is the spelling used on the witness statement signed by Simon Mina. This is also the spelling the parties use in the briefing.

¶6 The police then questioned Biel. Biel confirmed that he had been sitting behind the driver. But Biel denied firing the shots. Biel claimed that De La Torre stopped the car and shot the gun himself. At the end of the interview, the officers took Biel into custody.

¶7 Several months later, the police asked Mina to sign a witness statement. Mina demurred. He was willing to confirm that he was with De La Torre, Kuajian, and Biel. He was also willing to confirm that they were in a black Mercedes. But he refused to initial two lines of the pre-prepared statement: the lines that said Biel fired the shots that killed Wey. He wrote on the back of the form, "[Biel] had nothing to do with it," and initialed that instead.

¶8 Kuajian signed a witness statement implicating Biel as the gunman. But Kuajian later recanted. In a conversation with defense counsel, Kuajian said De La Torre was the shooter. He said that he initially implicated Biel under the duress of De La Torre's threats.

¶9 At a pretrial hearing, the State conceded it could not proceed against Biel unless it could admit Kuajian's and Mina's initial statements. The State lodged a motion *in limine* to admit the unsworn statements Kuajian and Mina made to officers shortly after the shooting in which they identified Biel as the person who fired the shots.

¶10 The district court ruled from the bench. In the course of denying the motion *in limine*, the district court described the inquiry:

> The question now is, given, sort of, what we know about what the witnesses are now saying, whether or not the State can call the witnesses, even though there is reason to believe that they will get on the stand and offer testimony that is harmful to the State's case against Mr. Biel in order to question them with the statements that they previously made to the police, these prior inconsistent statements.

And the district court identified two rules of evidence that it believed answered that question: rule 607 and rule 801(d)(1)(A).

¶11 Utah Rule of Evidence 607 states: "Any party, including the party that called the witness, may attack the witness's credibility."[4]

---

[4] Rule 607, which is identical to its federal counterpart, repealed the common-law voucher rule. R. COLLIN MANGRUM & DEE BENSON, MANGRUM & BENSON ON UTAH EVIDENCE, 1 UTAH PRAC. *Rule 607*, Westlaw (updated Nov. 2020). Under the voucher rule, a party could

(continued . . .)

UTAH R. EVID. 607. Applying the rule, the State argued that Kuajian and Mina "have changed their story." Therefore, the State argued, "[i]t is unknown what [Kuajian and Mina] will say when they take the witness stand and swear to tell the truth," but "[i]f they take the stand and testify contrary to their original statements, the plain language of rule 607 allows the State to impeach them with their prior inconsistent statements."

¶12 The State also argued that "the plain language of rule 801(d)(1)(A) allows [Kuajian's and Mina's] prior inconsistent statements to come in, not only as impeachment evidence, but also as substantive evidence as well." Rule 801 defines and regulates hearsay.[5] The rule provides that a witness's prior inconsistent statement does not constitute hearsay when the witness "testifies and is subject to cross-examination about [that] prior statement." UTAH R. EVID. 801(d)(1)(A).[6] Our caselaw and the plain text of rule 801(d)(1)(A) confirm that prior inconsistent statements are not hearsay but rather are admissible as substantive evidence. *See State v. Stricklan*, 2020 UT 65, ¶ 69 n.10, 477 P.3d 1251; *see also State v. Ramsey*, 782 P.2d 480, 484 (Utah 1989) ("Utah Rule of Evidence 801(d)(1)(A) acts more broadly to admit out-of-court statements or substantive evidence than its federal counterpart because the Utah rule does not require the out-of-court statement to be under oath.").

---

not impeach its own witness except under special circumstances, such as when a witness "unexpectedly and without explanation contradicts his or her prior testimony." *Id.* Rule 607 eliminates this "obligation to explain surprise or establish the hostility of a witness prior to impeaching that witness." *Id.*

[5] Hearsay is a statement that its "declarant does not make while testifying at the current trial or hearing" and that "a party offers in evidence to prove the truth of the matter asserted in the statement." UTAH R. EVID. 801(c). Rule 802 prohibits the admission of hearsay in court "except as provided by law or by these rules." *Id.* 802.

[6] Unlike rule 607, rule 801(d)(1) is not a verbatim copy of the corresponding Federal Rule. As the Original Advisory Committee Note explains, "[Utah rule 801(d)(1)] deviates from the federal rule in that [the Utah rule] allows use of prior statements as substantive evidence if (1) inconsistent or (2) the witness has forgotten, and does not require the prior statement to have been given under oath or subject to perjury." UTAH R. EVID. 801(d)(1) original advisory committee's note.

¶13 The district court drew heavily on federal law to give meaning to the Utah rules. In particular, the district court relied on the Fifth Circuit's reasoning in *United States v. Hogan*, 763 F.2d 697 (5th Cir. 1985), *withdrawn in part*, 771 F.2d 82 (5th Cir. 1985). The district court found that *Hogan* stands for the proposition that "you cannot call a witness that you know is going to be unhelpful to you and then get in prior hearsay, inadmissible evidence, for the purpose of impeaching the witness." Based in part on *Hogan*, the district court concluded that Kuajian's and Mina's prior inconsistent statements were inadmissible under rule 607 and rule 801(d)(1)(A).

¶14 With regard to rule 607, the district court concluded that the State has "as much reason to believe" that Kuajian and Mina were likely to offer harmful testimony as the prosecutor in *Hogan*. Therefore, if the State called Kuajian and Mina to impeach them under rule 607, the State would violate *Hogan*'s rule against calling witnesses it "knows to be hostile for the *primary* purpose of eliciting otherwise inadmissible impeachment testimony." *Hogan*, 763 F.2d at 702. For this reason, the district court found that *Hogan* would not permit the State to call Kuajian and Mina to impeach them using rule 607. The district court said simply, "Rule 607 doesn't work."

¶15 With regard to rule 801, the district court acknowledged that there is a "significant difference between Utah Rule of Evidence 801(d)(1)(A) and Federal Rule of Evidence 801(d)(1)(A)." Under the Utah Rules of Evidence, a witness's prior inconsistent statements are not considered hearsay if the witness "testifies and is subject to cross-examination." UTAH R. EVID. 801(d)(1)(A). By contrast, under the Federal Rules of Evidence, a witness's prior inconsistent statements are admissible only if they were given "under penalty of perjury." FED. R. EVID. 801(d)(1)(A). As a consequence, the district court found that Kuajian's and Mina's prior statements "don't meet the criteria for being non hearsay under the Federal Rule of Evidence, but they do meet the criteria for being non hearsay under the state Rule of Evidence."

¶16 However, the district court found this to be a distinction without difference. The court stated "arguably that same justification for not allowing a subterfuge to get around the [Federal] Rules of Evidence would apply to substantive evidence under [Utah] Rule 801(d)(1)(A)." The district court further reasoned, "even a substantive prior inconsistent statement[][,] absent getting the defendants on the stand and having them say something that is just unquestionably harmful to the State, . . . is inadmissible."

¶17 The district court located further support in R. COLLIN MANGRUM & DEE BENSON, MANGRUM & BENSON ON UTAH EVIDENCE, 1 UTAH PRAC., Westlaw (updated Nov. 2020) (MANGRUM & BENSON). The district court cited MANGRUM & BENSON for the proposition that, under Utah law, "a party cannot call a witness simply for the purpose of impeaching him with otherwise inadmissible evidence." The district court also took inspiration from the treatise's prediction that "this principle should also prohibit counsel from calling a witness who will testify . . . contrary to the proponent[']s theory of the case simply to get before the jury an inconsistent statement under Utah's broadly worded non-hearsay category under Rule 801(d)(1)(A)."

¶18 The district court also relied on *Ramsey*, 782 P.2d 480. In *Ramsey*, this court held that "a conviction that is based entirely on a single, uncorroborated hearsay out-of-court statement that is denied by the declarant in court under oath cannot stand." *Id.* at 484. Applying *Ramsey*, the district court reasoned that, if Kuajian and Mina were allowed to testify and their prior inconsistent statements were then introduced

> the only substantive evidence that would exist based on the State's representations to the Court would be these prior inconsistent statements that were made to the police officers and under *State v. Ramsey* that would not be enough to sustain a conviction, a directed verdict would be required under those circumstances.

Thus, the district court concluded it would be improper to allow Kuajian's and Mina's prior inconsistent statements to come before the jury, even though Utah's rule 801(d)(1)(A) is more expansive than its federal analogue.

¶19 For these reasons, the district court denied the State's motion *in limine*. The State petitioned this court for permission to appeal the district court's interlocutory order.

## STANDARD OF REVIEW

¶20 "The standard of review when considering the admissibility of out-of-court statements under the Utah Rules of Evidence depends on 'whether the trial court's analysis involves a factual or legal determination or some combination thereof.'" *State v. Parker*, 2000 UT 51, ¶ 13, 4 P.3d 778 (citation omitted). When the trial court's analysis is factual, this court applies "a clearly erroneous standard of review to those findings." *Id.* But "[w]e review the district court's legal conclusions for correctness" and afford "no deference to the district [court's] legal determinations." *State v. Lusk*, 2001 UT 102,

¶ 10, 37 P.3d 1103 (second alteration in original) (quoting *Meadowbrook, LLC v. Flower*, 959 P.2d 115, 116 (Utah 1998)) (internal quotation marks omitted).

¶21 We are asked to review the district court's interpretation of the Utah Rules of Evidence. This presents a question of law that we review for correctness. *Id.* We are also asked to determine if the State invited the district court's error. This is a legal question that we review for correctness. *Id.*

## ANALYSIS

¶22 This appeal presents two issues. First, we must examine whether the district court erred in its interpretation of the Utah Rules of Evidence. Second, if the district court did err, we must determine if the State invited that error.

### I. THE DISTRICT COURT MISINTERPRETED
### THE RULES OF EVIDENCE

¶23 The State argues that the district court's holding is contrary to the text of the Utah Rules of Evidence and unsupported by caselaw.

¶24 The State knows its audience and starts by playing the hits. It argues that the district court strayed from the rules' text to reach its decision. Referencing Utah Rule of Evidence 801(d)(1)(A), the State posits:

> Nothing *in the rule* prevents a party from calling an adverse witness then presenting the jury with their prior inconsistent statements should their testimony contradict their prior statements. And the rule's plain language allows the jury to consider the prior statement for the truth of the matter asserted in that statement.

Thus, the State contends the district court's interpretation is extra-textual. Indeed, the State argues that not only is the district court's decision not based in the rule's language, but it is also contra-textual, in that it would forbid evidence the plain language of 801(d)(1)(A) permits.

¶25 The State observes that this court has repeatedly eschewed extra-textual or contra-textual judicial glosses on the Utah Rules of Evidence. *See State v. Lowther*, 2017 UT 34, ¶ 30 n.40, 398 P.3d 1032 (repudiating our prior characterization of rule 404(b) as an "inclusionary" rule and instead looking "to the plain language of rule 404(b) for the standard for the admissibility of evidence"); *see*

*also Met v. State*, 2016 UT 51, ¶ 90, 388 P.3d 447 (abandoning factors we previously created for rule 403 in favor of "the ultimate rule 403 test—whether the probative value of a photograph is *substantially outweighed* by a danger of unfair prejudice or . . . other considerations"— i.e., the rule's plain text).

¶26 We agree. "[W]e interpret a court rule in accordance with its plain meaning . . . ." *State v. Rothlisberger*, 2006 UT 49, ¶ 15, 147 P.3d 1176. In keeping with this principle, we start with the plain meaning of rule 607 and rule 801(d)(1)(A).

¶27 The plain language of rule 607 and rule 801 of the Utah Rules of Evidence does not support the district court's interpretation. Rule 607 states: "Any party, including the party that called the witness, may attack the witness's credibility." UTAH R. EVID. 607. Rule 801(d)(1)(A) states: "A statement that meets the following conditions is not hearsay: . . . [if] [t]he declarant testifies and is subject to cross-examination about a prior statement, and the [prior] statement . . . is inconsistent with the declarant's testimony or the declarant denies having made the statement or has forgotten." UTAH R. EVID. 801(d)(1)(A).

¶28 No party contends that Mina and Kuajian are witnesses without relevant testimony. Rule 607 permits the State to call Mina and Kuajian and to attack their credibility if need be. And rule 801(d)(1)(A) allows the State to cross-examine them with their prior inconsistent statements.

¶29 Acting contrary to the text of rule 607 and rule 801(d)(1)(A), the district court excluded evidence that ought to have been admissible. Thus, a plain meaning analysis supports reversing the district court. That is, the rules permit the State to do what it moved *in limine* to do, and the district court erred when it denied that motion.

¶30 Biel defends the district court's ruling with two arguments. First and foremost, Biel emphasizes the primary case that the district court relied on to reach its decision, *United States v. Hogan*, 763 F.2d 697 (5th Cir. 1985), *withdrawn in part*, 771 F.2d 82 (5th Cir. 1985). *Hogan* stands for the proposition that the "prosecution . . . may not call a witness it knows to be hostile for the *primary* purpose of eliciting otherwise inadmissible impeachment testimony, for such a scheme merely serves as a subterfuge to avoid the hearsay rule." *Id.* at 702. Biel argues that "*Hogan* is essentially on all fours with the case at bar—rule 607 is identical under both the state and federal rules, and the argument the government asserted before the Fifth Circuit is basically identical to the argument the State asserted below here."

(citation omitted). Biel posits that "*Hogan*'s logic applies with equal force here, regardless of the difference between the narrow federal hearsay rule and Utah's broadly-worded non-hearsay rule" in 801(d)(1)(A).

¶31 As Biel further explains, Kuajian's and Mina's "out-of-court statements constitute inadmissible hearsay . . . unless and until they testify contrary to their prior out-of-court statements." (citation omitted). According to Biel, "the statements could only come in if the State impeached [Kuajian] and [Mina] with them under rule 607." Biel also approvingly cites the district court's observation that, by calling Kuajian and Mina, "there's every reason to believe these witnesses are going to take the stand and offer harmful evidence." (internal quotation marks omitted). Therefore, "the State is relying on rule 607 to 'avoid the hearsay rule[,]' which would otherwise exclude the witnesses' out-of-court statements." (alteration in original) (citation omitted). In Biel's telling, this is an "end-run" around the rules of evidence that *Hogan* called out and forbad.

¶32 In other words, Biel, echoing the district court, argues that the State wants to introduce out-of-court statements that are not admissible as prior inconsistent statements until they are inconsistent with testimony offered at trial. And Biel uses *Hogan* to argue that the State should not be allowed to create the inconsistency that permits the statements to be introduced.

¶33 The State downplays *Hogan*'s persuasive value arguing that, "in Utah, the federal rule 607 end-run rationale does not apply because there is no end to run around: Unsworn prior inconsistent statements are admissible under rule 801(d)(1)(A) for the truth of the matter asserted." We agree with the State that the "end run" the *Hogan* court identified does not exist in the Utah Rules of Evidence.

¶34 Unlike Federal Rule of Evidence 801(d)(1)(A), Utah's rule 801(d)(1)(A) applies to the prior inconsistent statements a testifying witness makes, regardless of whether those prior statements were made under penalty of perjury. *Compare* UTAH R. EVID. 801(d)(1)(A), *with* FED. R. EVID. 801(d)(1)(A). Because of this, under the federal regime, unsworn prior inconsistent statements can be admissible for impeachment but not as substantive evidence. But in Utah, there is no danger of impeachment evidence being mistaken for substantive evidence or of hearsay being mistaken for non-hearsay. Simply put, *Hogan*'s rationale does not apply to the Utah Rules of Evidence.

¶35 We acknowledge Biel's argument that the State's motion *in limine* has the feel of an "end-run" because the State cannot introduce Kuajian's and Mina's statements until they are

inconsistent. And there does seem to be something not quite cricket about permitting a party to create the inconsistency that opens the door to the prior statements. But on balance, any concerns about that dynamic are outweighed by the trial's truth-seeking function.

¶36 No party argues that Kuajian and Mina are unlikely to possess relevant information about the case. When the State calls them, Kuajian and Mina will either: (1) stick with their original story (and no one would say that the State could not call them for that purpose); (2) testify consistent with their revised story (and then the State could properly introduce their prior inconsistent statements); or (3) say something completely different (and then the State could introduce the prior statements all the same). All of these outcomes are permissible under the Utah Rules of Evidence. All of these outcomes could provide valuable information to the jury.

¶37 We also acknowledge the policy arguments against permitting the jury to hear the witnesses' prior versions of the events. These primarily involve concerns that the jury might be confused by the earlier statements and that unsworn out-of-court statements are not sufficiently reliable to be introduced as substantive evidence. But these are policy arguments we implicitly rejected when we amended rule 801 to permit their admission of unsworn out-of-court statements for their truth.[7]

¶38 Biel also argues that *State v. Ramsey*, 782 P.2d 480 (Utah 1989), supports the district court's ruling. In *Ramsey*, this court found that a prior inconsistent statement was substantive evidence but "at best highly unreliable" and therefore insufficient to sustain a conviction. *Ramsey*, 782 P.2d at 483. Biel uses *Ramsey*'s holding to argue that, "just because non-hearsay constitutes substantive evidence under Utah's rules, [this] does not mean the policy against using rule 607 as a subterfuge to avoid the rule against hearsay loses its logical force."

¶39 As Biel explains,

> [E]ven though [Kuajian's] and [Mina's] prior out-of-court statements, if appropriately admitted under rule

_____

[7] Other guardrails exist that can constrain the use of prior inconsistent statements. For example, under Utah Rule of Evidence 403, a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." UTAH R. EVID. 403. A district court may apply this calculus to any piece of admissible evidence that comes before it.

801(d)(1)(A), constitute substantive evidence, that does not negate that the statements remain unreliable nor does it negate the risk that the jury could convict Biel solely on the basis of unreliable evidence in potential violation of his due process rights.

Therefore, Biel argues that the district court was right to hold that the prior inconsistent statements are inadmissible.

¶40 The State notes that "*Ramsey* was about the sufficiency, not the admissibility, of evidence. *Ramsey* did not say that the prior inconsistent statement [it considered] was inadmissible, only that it was insufficient on its own to support conviction there." We agree. *Ramsey* might have some role to play if Biel is convicted and wants to challenge the sufficiency of the evidence introduced to establish his guilt. But the fact that we have commented upon a conviction that rested solely on an unsworn and unsubstantiated out-of-court statement does not mean that we will, in the context of a pending case, rewrite the Rules of Evidence to prevent the admission of such a statement.

¶41 Finally, Biel notes that MANGRUM & BENSON supports the district court's position. Biel quotes MANGRUM & BENSON for the proposition that the Utah Rules "should . . . prohibit counsel from calling a witness who will testify to facts contrary to the proponent's theory of the case, simply to get before the jury an inconsistent statement under Utah's broadly worded nonhearsay category under rule 801(d)(1)(A)." *See* MANGRUM & BENSON, *Rule 607*. MANGRUM & BENSON is one of the preeminent treatises on Utah law and a valuable source of legal analysis. But, notably, MANGRUM & BENSON cites no Utah caselaw in support of its assertion. MANGRUM & BENSON merely predicted what Utah law would be. And it predicted incorrectly.

¶42 Biel also advances policy arguments in support of the district court's ruling. He primarily argues that the interpretation *Hogan* gave to the federal rules is fairer than the interpretation we give to the Utah rules. Biel contends,

> The federal interpretation of rule 607 promotes fairness because it allows the government to impeach its own witness so long as the government called the witness on the good faith belief that the witness's testimony would support the government's theory of the case. It promotes fairness because if the government calls a witness with the intent of sneaking in otherwise

> inadmissible hearsay evidence, it does not allow the government to impeach the witness.[8]

Biel then analogizes the federal approach to rule 607 to our approach to rule 404(b), the rule restricting the use of character evidence. *See* UTAH R. EVID. 404(b). Rule 404(b) requires courts to assess a party's purpose in offering a particular piece of evidence: The rule permits some uses of character evidence but not others. *Id.* This is similar to the federal approach to rule 607, where the court must determine if the prosecution is sincerely attempting to offer a witness's testimony or merely engaging in "subterfuge to avoid the hearsay rule." *Hogan*, 763 F.2d at 702.

¶43 The fault with Biel's argument lies in his interpretation of the text. Biel's argument neglects that Utah Rule of Evidence 404(b) requires an inquiry into the purpose for which the evidence is being offered. The rule states, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show *that on a particular occasion the person acted in conformity with the character*." UTAH R. EVID. 404(b)(1) (emphasis added). As a result, the rule demands that the court examine the purpose for which the evidence is offered. Neither rule 607 nor 801(d)(1)(A) contains a similar requirement.[9] *See* UTAH R. EVID. 607; *see also id.* 801(d)(1)(A).

¶44 Kuajian's and Mina's prior inconsistent statements are admissible. The State can seek to call these witnesses, even if they are likely to testify contrary to the State's theory of the case. The district court erred when it denied the motion *in limine*.

---

[8] We note that while Biel argues in terms of what the State wants to do in this case, this is not an interpretation of the rules that *always* favors the State and disfavors a defendant. There will undoubtedly be instances where a defendant will want to put a witness on the stand for reasons similar to those that motivate the State here.

[9] The arguments Biel advances may be more properly directed to the Supreme Court Advisory Committee on the Rules of Evidence. That is the committee that recommended we depart from the federal rule, and the committee can recommend additional changes if warranted.

## II. THE STATE DID NOT INVITE
## THE DISTRICT COURT'S ERROR

¶45 Biel offers another reason why we should let the district court's order stand. Biel contends the State invited the district court to commit the error of which it now complains.

¶46 Our doctrine of invited error is intended to prevent "parties from intentionally misleading the trial court so as to preserve a hidden ground for reversal on appeal." *State v. McNeil*, 2016 UT 3, ¶ 17, 365 P.3d 699 (citation omitted) (internal quotation marks omitted). An "error is invited when counsel encourages the trial court to make an erroneous ruling." *Id.* We usually find invited error "when the context reveals that counsel independently made a clear affirmative representation of the erroneous principle." *Id.* ¶ 18 (citations omitted). We also understand, however, the ebb and flow of courtroom argument, and we have acknowledged that, at times, an attorney winds up following a court's lead. We have held that where "the trial court—not counsel—is responsible for leading a courtroom discussion into error, any resulting error is not invited." *Id.* ¶ 19.

¶47 Biel argues that the State invited error when it admitted "it would be improper for the State to put a witness on the stand with the intent of impeaching them with their prior inconsistent statements." This statement, on its face, goes to the heart of the contested issue. It appears to invite the district court to err, on the same grounds that the State challenges on interlocutory appeal. That is, the State conceded that it could not do what it now asks us to allow it to do—to put a witness on the stand in hopes of impeaching the witness with his prior inconsistent statements.

¶48 Biel has a point. Viewed in insolation, the State's concession that it would be improper to call a witness knowing they would give unhelpful testimony resembles a statement in which "counsel independently made a clear affirmative representation of the erroneous principle." *Id.* ¶ 18.

¶49 But when we look at the context in which the State made this disputed statement, Biel's argument becomes less compelling. Immediately before the State's concession, the district court pressed the State on its motive for wanting to call Kuajian and Mina. The district court said:

> You would not call them but for the fact that you were
> going to try to put into evidence this evidence that is
> otherwise inadmissible. And so you put them on the

> stand anticipating the negative information will come
> in, and then you use that as a basis to introduce
> evidence you otherwise wouldn't be able to introduce.

The State pushed back by arguing that it was not, in fact, expecting Kuajian and Mina to testify contrary to their prior statements. The State conceded that the kind of impeachment envisioned by the district court—"put[ting] on a witness with the intent of impeaching them with their prior inconsistent statements"—would be improper. Viewed in this context, this is not the type of "independent[]" statement of "the erroneous principle" that causes us concern. *Id.* Instead, this was a trial attorney reading the room and trying to get half a loaf before the court took all the bread.

¶50 In that circumstance, the "trial court—not counsel—is responsible for leading a courtroom discussion into error." *Id.* ¶ 19. The district court here intimated that the State's plan to call Kuajian and Mina was a kind of subterfuge: an attempt to "use that as a basis to introduce evidence you otherwise wouldn't be able to introduce." The State, apparently sensing the district court's resistance to this approach, attempted to reassure the district court. The State acquiesced that it would be improper to call Kuajian and Mina with "the intent of impeaching them with their prior inconsistent statements," but only because the district court suggested that was what the State was trying to do. The State therefore did not "independently" invite error. *Id.* ¶ 18. Thus, there is no bar to our reaching the argument.

## CONCLUSION

¶51 The district court misinterpreted the Utah Rules of Evidence. Nothing in the rules prohibits the State from calling a witness the State knows or suspects will give unhelpful testimony if the State plans to impeach the witness with the witness's helpful prior inconsistent statements. As such, we reverse the district court's ruling on the State's motion *in limine* and remand.