2023 UT App 84

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
WILLIAM BLAINE CLAYTON,
Appellant.

Opinion
No. 20210890-CA
Filed August 3, 2023

Third District Court, West Jordan Department
The Honorable William K. Kendall
No. 191403929

Robert T. Denny, Attorney for Appellant

Sean D. Reyes and Karen A. Klucznik,
Attorneys for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN D. TENNEY
concurred.

HARRIS, Judge:

¶1      At William Clayton's preliminary hearing, the State did not call a live witness; instead, the State offered only documentary evidence, including written declarations from two police officers. Based solely on this evidence, the magistrate bound Clayton over for trial. Clayton later moved to quash the bindover, arguing that the State's evidence was insufficient to support it. The district court denied the motion, and we granted Clayton leave to take an interlocutory appeal from that decision. We perceive no error in the court's actions, and therefore affirm.

BACKGROUND

¶2 Clayton was arrested and charged with third-degree-felony DUI and two misdemeanor drug counts, and the case proceeded to a preliminary hearing. At that hearing, the State opted not to call any live witnesses, but instead relied solely on documentary evidence. Specifically, the State offered a toxicology report showing that Clayton had drugs in his system, court records showing that Clayton had prior DUI-related convictions, and written statements from two police officers (Officer 1 and Officer 2). In their statements, which were both captioned "WITNESS STATEMENT FOR USE AT PRELIMINARY EXAMINATION," the officers indicated that they were police officers and that they were "providing th[e] statement[s] in lieu of [their] personal appearance[s]" at the hearing. Both statements included a photograph of a man that each officer identified as Clayton. Each officer then spent several paragraphs describing their involvement in the events that led to Clayton's arrest.

¶3 In her statement, Officer 1 recited that she "responded to a report of a male who would not wake up and was slumped over in the driver's seat" of a vehicle that was "stopped in traffic." The man "was not breathing, and was foaming at the mouth." A "female passenger" in the vehicle told Officer 1 that the man "had taken 'spice,'" and Officer 1 "administered two doses of Narcan." Soon thereafter, Officer 1 observed the man start to "become alert and take shallow breaths," and Officer 1 arranged for the man to be transported to a hospital. By examining the man's driver license, Officer 1 identified the man as Clayton. Later, Officer 1 traveled to the hospital and "made contact with Clayton." Officer 1 observed that Clayton "had blood shot eyes and was not being cooperative"; Clayton "initially refused a blood test, but eventually agreed to a blood draw," the results of which "showed the presence of 11 nanograms *per milliliter* of Lorazepam and 60 nanograms of Trazadone per milliliter of blood." (Emphasis added.) Officer 1 also recited that her fellow officer, Officer 2, informed her "that while he was securing [Clayton's] car, he

located suspected spice in the driver's side door and an apple bong on the front passenger floorboard."

¶4    In his statement, Officer 2 recited that he "responded . . . to a report of a male who was stopped in traffic on the road" and who "would not wake up and was slumped over in the driver's seat." After Clayton "was transported to the hospital," Officer 2 was responsible for "securing Clayton's car," and in the process of completing that task, Officer 2 "observed 3 vials of a green leafy substance in the driver's side door, which" he "suspected to be 'spice.'" Officer 2 also located "an apple bong on the passenger side floor." He stated that "[t]he leafy substance was sent to the Utah Bureau of Forensic Services" which identified it as "a listed controlled substance."

¶5    Most of the words in both statements were typed, but the officers wrote their initials next to each individual typed paragraph and then signed and dated their statements at the bottom of the page. In Officer 1's statement, two words had been inserted by hand into the typed text; those words were "per milliliter," the ones emphasized above.

¶6    Both statements contained a separate box at the top of the page that contained the following text:

> I understand that pursuant to Rule 1102, Utah Rules of Evidence and Section 76-8-504.5, Utah Code Annotated, the statements I am about to make in this document may be presented to a magistrate or a judge in lieu of my sworn testimony at a Preliminary Hearing. <u>I also understand that any false statement I make and that I do not believe to be true may subject me to criminal punishment as a Class A Misdemeanor. In Utah a class A misdemeanor carries a potential penalty of up to a year in jail and a fine of up to $2,500 plus a 90% surcharge.</u>

I understand the above statement.

(Emphasis in original.) The officers each provided an additional signature, located in the box and just below this textual recitation.

¶7      Clayton objected to the admission of these statements, claiming that "without the [S]tate providing some foundation for authenticity of the" statements, the magistrate would be unable to "make the necessary findings that they are . . . [rule] 1102 witness statements." The magistrate, however, disagreed, and bound Clayton over for trial on all charges, based on the evidence presented by the State.

¶8      Clayton then moved to quash the bindover, asserting that the officers' statements were inadmissible and that, without those statements, the State had failed to present sufficient evidence to support the bindover. He argued that, under rule 1102(b)(8) of the Utah Rules of Evidence, witness statements needed to be either "written by the declarants themselves" or "transcribed verbatim" by another person. Under this interpretation of the rule, a witness statement drafted by another person and signed by the declarant would not qualify as admissible. Building on this reading of the rule, Clayton asserted that the State had not laid sufficient foundation to show that the officers' statements had been either prepared by the officers themselves or transcribed verbatim. Clayton also argued that admission of the officers' statements violated the principles set forth in *State v. Bertul*, 664 P.2d 1181 (Utah 1983), a case in which our supreme court held that police reports are inadmissible in criminal trials. *Id.* at 1184. But Clayton made no argument regarding subsection (6) of rule 1102(b).

¶9      After oral argument, the district court denied Clayton's motion, concluding that rule 1102(b)(8) "contains no requirement that the witness be the one that writes the statement" and that the State did not need to provide any additional foundation in order to admit the officers' statements into evidence. Clayton then

asked for leave to take an interlocutory appeal from the court's order denying the motion to quash, a request that we granted.

## ISSUE AND STANDARD OF REVIEW

¶10    "The determination of whether to bind a defendant over for trial generally involves a mixed question of law and fact . . . ." *State v. Rhinehart*, 2006 UT App 517, ¶ 8, 153 P.3d 830. "However, when a case presents only a question of law, namely whether hearsay used at the preliminary hearing was admissible . . . or reliable under rule 1102 of the Utah Rules of Evidence, this court will review the bindover determination for correctness[,] giving no deference to the [district] court." *Id.* And "the district court's interpretation of the Utah Rules of Evidence . . . presents a question of law that we review for correctness." *State v. Biel*, 2021 UT 8, ¶ 21, 484 P.3d 1172.

## ANALYSIS

¶11    In a provision sometimes referred to as "Utah's Confrontation Clause," *see State v. Timmerman*, 2009 UT 58, ¶ 14, 218 P.3d 590, our state constitution guarantees that "[i]n criminal prosecutions the accused shall have the right to . . . be confronted by the witnesses against the accused." Utah Const. art. I, § 12. But this provision contains an exception applicable to criminal preliminary hearings, added by amendment in 1995; that exception provides that "[n]othing in this constitution shall preclude the use of reliable hearsay evidence as defined by statute or rule in whole or in part at any preliminary examination." *Id.* Enactment of this amendment "removed the constraints of Utah's Confrontation Clause from preliminary hearings." *Timmerman*, 2009 UT 58, ¶ 16.

¶12    Following the 1995 constitutional amendment, Utah's rules of evidence were also amended to include a definition of "reliable

hearsay." That definition is found in rule 1102 of the Utah Rules of Evidence. *See* Utah R. Evid. 1102(b) (captioned "Definition of Reliable Hearsay"). As relevant here, the rule makes clear that "reliable hearsay includes" the following things:

- "a statement of a non-testifying peace officer to a testifying peace officer"; and

- "a statement of a declarant that is written, recorded, or transcribed verbatim which is [either] (A) under oath or affirmation; or (B) pursuant to a notification to the declarant that a false statement made therein is punishable."

*See id.* R. 1102(b)(6), (8). Since the enactment of these amendments, "[a]dmission of evidence at preliminary hearings is exclusively governed by the reliable hearsay language in the Utah Constitution and rule 1102 of the Utah Rules of Evidence." *Timmerman*, 2009 UT 58, ¶ 16.

¶13 At the preliminary hearing in this case, the State offered the officers' statements under rule 1102(b)(8), arguing that the statements met the requirements of that rule because they were "written" and had been made "pursuant to a notification that a false statement made therein is punishable." The magistrate (and, later, the district court in connection with the motion to quash) accepted the State's interpretation of the rule, and concluded that the statements satisfied the rule and were therefore admissible.

¶14 Clayton advances a different interpretation of rule 1102(b)(8). In his view, the rule requires that written rule 1102 statements be either "written by the declarants themselves" or "transcribed verbatim," presumably by another person, from the declarants' statements. Under this interpretation, a witness statement drafted by someone other than the declarant, even if signed by the declarant, would not meet the requirements of the rule absent the existence of foundational evidence indicating that

it had been "transcribed verbatim." Clayton asserts that the State did not provide any evidence demonstrating that the officers' statements were either written by the officers themselves or transcribed verbatim from statements they made, and therefore maintains that the State has failed to demonstrate that the statements comport with the rule's requirements.[1]

¶15 The parties thus present to us a question of rule interpretation. "When interpreting our rules of evidence, we use general rules of statutory construction." *Snow, Christensen*

---

1. We note that, effective May 2023, our legislature amended rule 1102—pursuant to its power to amend our rules of evidence, *see Brown v. Cox*, 2017 UT 3, ¶ 17, 387 P.3d 1040 (noting that the Utah Constitution gives our legislature the "ability to amend" rules of evidence "by supermajority")—to add a provision forbidding any "prosecutor, or any staff for the office of the prosecutor," from "draft[ing] a statement for a declarant." *See* Utah R. Evid. 1102(d)(2); *see also* Act of May 3, 2023, 2023 Utah Laws, S.J.R. 6. But we must apply the version of rule 1102 that was in effect at the time of the events at issue in this appeal. *See State v. Clark*, 2011 UT 23, ¶ 13, 251 P.3d 829 ("[W]e apply the law as it exists at the time of the event being regulated by the law in question."). All of those events—Clayton's arrest, the creation of the officers' statements, the preliminary hearing, and the filing of the motion to quash—occurred in 2019 and 2020, well before the 2023 amendments to rule 1102. We therefore apply the previous version of the rule, rather than the one that includes the 2023 amendments. At oral argument before this court, both sides were in agreement on this point, and neither asked us to apply the new version of the rule. But to the extent that Clayton asks us to apply the new rule as a "clarifying amendment"—something he alludes to in his reply brief—we decline that invitation, because our supreme court has "expressly repudiate[d] the notion of" a "'clarification' exception to the general rule against retroactivity." *See State v. Steinly*, 2015 UT 15, ¶ 11, 345 P.3d 1182.

*& Martineau v. Lindberg*, 2013 UT 15, ¶ 30, 299 P.3d 1058 (quotation simplified). Applying these rules, we interpret the rule in question in such a way as "to give meaning to all its parts, avoid . . . render[ing] any portion of it superfluous, and . . . maintain its harmony with other court rules related to it." *State v. Rothlisberger*, 2006 UT 49, ¶ 21, 147 P.3d 1176. We begin with the text of the rule, *see Snow, Christensen & Martineau*, 2013 UT 15, ¶ 30, interpreting the language "in accordance with its plain meaning," *State v. Biel*, 2021 UT 8, ¶ 26, 484 P.3d 1172 (quotation simplified).

¶16 The first part of the relevant subsection provides that reliable hearsay includes "a *statement of a declarant* that is *written, recorded, or transcribed verbatim*." Utah R. Evid. 1102(b)(8) (emphases added).[2] Both emphasized phrases are important in assessing the strength of Clayton's interpretation of the rule.

¶17 The phrase "statement of a declarant" includes the notion that the statement in question must belong to the declarant. But that phrase does not require that the statement actually be prepared by the declarant; a declarant may ordinarily indicate ownership of a statement in ways other than by its preparation. As routinely used in other litigation contexts (e.g., summary judgment proceedings in civil cases, or motions filed pursuant to rule 23B of the Utah Rules of Appellate Procedure in criminal appeals), a declarant's statement may take the form of affidavits or declarations typed up by another individual (often, an attorney for a party) and then signed or attested to by the declarant. We are aware of no common usage of the phrase "statement of a declarant"—or even the term "statement"—that implies a requirement that the declarant must have personally prepared the statement; certainly, Clayton does not identify any such common usage. And nothing in the plain meaning of the words "statement

---

2. The second part of the subsection is not at issue here, since Clayton acknowledges that the officers' statements were made "pursuant to a notification to the declarant that a false statement made therein is punishable." *See* Utah R. Evid. 1102(b)(8)(B).

of a declarant" requires that the statement be written or prepared by the declarant personally. We may not, of course, imply requirements into the rule that are not indicated by its text. *See State v. Rudolph*, 970 P.2d 1221, 1229 (Utah 1998) (stating that "courts are not to infer substantive terms into the text that are not already there," and emphasizing that "the court has no power to rewrite the statute to conform to an intention not expressed" (quotation simplified)).

¶18 Clayton asserts, however, that the other emphasized phrase in rule 1102(b)(8)—that the statement be "written, recorded, or transcribed verbatim"—supports his interpretation. He argues that the third term in this list—"transcribed verbatim"—is rendered superfluous under the State's interpretation. In his view, "rule 1102(b)(8) must be read to mean that when a third party prepares a declarant's statement it must be 'transcribed verbatim,'" and that "if a writing prepared by someone other than the declarant could qualify" as reliable hearsay, "even if it was not 'transcribed verbatim,' there would be no need to include the 'transcribed verbatim' language."

¶19 We read the phrase differently. The rule's use of the disjunctive "or" indicates that each item in this three-item list operates independently. *See Horne v. Flores*, 557 U.S. 433, 454 (2009) (stating that "[u]se of the disjunctive 'or' makes it clear that each of the provision's three grounds for relief is independently sufficient"). Thus, in order to qualify as reliable hearsay, a statement of a declarant need only be either (a) written, (b) recorded, or (c) transcribed verbatim. Each of those three items stands alone, and has non-superfluous meaning, even in the absence of a requirement that declarants prepare their own statements. The "written" and "recorded" options seem fairly obvious to us: at preliminary hearings, prosecutors may present statements from declarants that are either written down or audio-recorded. And in our view, the "transcribed verbatim" option exists to cover situations where a declarant has provided an oral recorded statement but where prosecutors—because, for

example, they anticipate technical problems presenting the recording in court—wish to present that statement to the court on paper. In that event, the rule allows them to present a verbatim transcription of the declarant's oral statement. And in such cases, the option for a "written" statement would not apply, because the actual statement the declarant originally gave was not written.

¶20　Thus, in our view the interpretation of the rule advanced by the State, and adopted by the district court, is the correct one.[3] It is in keeping with the plain meaning of the text, does not read additional terms into the text, and does not render any of the terms superfluous. Under this interpretation, nothing in the rule

---

3. Both parties argue that the new version of the rule, as amended by our legislature in 2023, *see supra* note 1, supports their interpretation of the previous rule. Clayton points to the new provision that forbids prosecutors from preparing rule 1102 statements for declarants, and he asserts that this new language bespeaks consistent intent on the part of the drafters to require self-prepared statements. The State emphasizes that the new provision forbids only prosecutors—but no other third parties—from preparing rule 1102 statements for declarants, and infers therefrom that there is not now, and never has been, any intent on the part of the drafters to require *all* statements to be self-prepared by the declarant. In the context of this case, however, we find little value in either of these arguments, largely because we are skeptical that recent actions taken by our legislature can shed much light on what the earlier drafters of rule 1102—presumably our supreme court, informed by an advisory committee—might have intended in composing the previous version of the rule. *See, e.g.*, *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117–18 (1980) (stating that "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one" and are not "entitled to much weight"). We therefore give little, if any, weight to the parties' competing arguments about which way the 2023 amendment cuts.

requires that declarants personally prepare their written statements. The rule requires only that a statement be "of a declarant," that it be "written," and that it be made either "under oath or affirmation" or "pursuant to a notification to the declarant that a false statement made therein is punishable." *See* Utah R. Evid. 1102(b)(8). The officers' statements, on their face, met all of these requirements: they were written, and they included signatures indicating not only the officers' adoption of the content of the statements but also their awareness of the possibility of punishment for falsity. Thus, the statements met the conditions of the rule, and no additional foundation was required.[4]

¶21 Next, Clayton asserts—citing *State v. Bertul*, 664 P.2d 1181 (Utah 1983)—that case law from our supreme court mandates that the officers' statements be excluded from consideration at the preliminary hearing. In *Bertul*, the court held, among other things, that police reports are generally inadmissible *at trial* when offered by the prosecution under the business records exception to the hearsay rule. *Id.* at 1185–86. Clayton suggests that the officers' statements are akin to police reports, and that a preliminary hearing is akin to a trial. We reject Clayton's argument because, for two related reasons, *Bertul* is inapposite here.

¶22 As an initial matter, *Bertul*'s holding applies only to evidence admissible *at trial*, not at a preliminary hearing. *See id.* Admissibility of reliable hearsay evidence at preliminary hearings is governed by rule 1102, which (as we have already explained) allows admission of the officers' statements. Moreover, and relatedly, since *Bertul* was decided, two important developments have occurred: our state constitution was amended to "remove[] the constraints of Utah's Confrontation Clause from preliminary hearings," *see Timmerman*, 2009 UT 58, ¶ 16, and rule 1102 was

---

4. Indeed, Clayton acknowledged, at oral argument before this court, that if we adopt the State's interpretation of the rule, no additional foundational evidence needed to be presented with regard to the officers' statements.

enacted to give specificity to the new constitutional provision allowing admission of "reliable hearsay" at preliminary hearings, *see* Utah R. Evid. 1102(b). As we have already noted, ever since these amendments, "[a]dmission of evidence at preliminary hearings is exclusively governed by the reliable hearsay language in the Utah Constitution and rule 1102 of the Utah Rules of Evidence." *Timmerman*, 2009 UT 58, ¶ 16. Thus, even assuming that one could read *Bertul* to mandate restraints on the admission of evidence at preliminary hearings (as opposed to trials), those restraints have been superseded by subsequent events.[5]

¶23 Finally, Clayton argues—for the first time on appeal—that rule 1102(b)(6) of the Utah Rules of Evidence forbids introduction, at preliminary hearings, of written statements made by law enforcement officers. As Clayton sees it, "officer hearsay cannot be introduced through rule 1102(b)(8)" in the form of written statements, but must instead be introduced orally, pursuant to rule 1102(b)(6), through the testimony of another testifying officer. In his view, rule 1102(b)(6) "specifically identifies when an officer's out of court statement can be 'reliable hearsay,'" and he believes that subsection provides the exclusive avenue for introduction of such hearsay.

¶24 But we need not engage with the merits of this argument, because Clayton did not preserve it for our review. *See Gowe v. Intermountain Healthcare, Inc.*, 2015 UT App 105, ¶ 7, 356 P.3d 683 (stating that, "to preserve an argument for appellate review, the appellant must first present the argument to the district court in such a way that the court has an opportunity to rule on it," and

---

5. In his brief, Clayton relies not only on *Bertul* but also on *State v. Anderson*, 612 P.2d 778 (Utah 1980). As relevant here, our supreme court has already noted that *Anderson*—at least to the extent that it "prohibited the use of hearsay evidence at preliminary examinations"—"has been abrogated by a constitutional amendment," namely the 1995 amendment to Article I, Section 12. *See State v. Timmerman*, 2009 UT 58, ¶ 15, 218 P.3d 590.

observing that "we generally do not address unpreserved arguments raised for the first time on appeal" (quotation simplified)), *cert. denied*, 364 P.3d 48 (Utah 2015). At no point during the proceedings before the magistrate or the district court did Clayton assert that rule 1102(b)(6) provides the exclusive means of admitting an officer's out-of-court statement at a preliminary hearing. Clayton asserts that his citation to *Bertul* was sufficient to preserve the issue, but we disagree; after all, as we have noted, rule 1102(b)(6) did not exist at the time *Bertul* was decided. Because Clayton's rule 1102(b)(6) argument was not properly preserved for our review, and because Clayton does not ask us to apply any of the exceptions to our preservation doctrine, we decline to discuss the argument further.

CONCLUSION

¶25 Rule 1102(b)(8)—as it existed at the time of the events giving rise to this appeal—does not require that an out-of-court written statement offered into evidence at a preliminary hearing be personally prepared by the declarant. Accordingly, the officers' statements met the requirements of rule 1102(b)(8) and were properly admitted into evidence as "reliable hearsay" at Clayton's preliminary hearing; with those statements in evidence, the State submitted sufficient evidence to support bindover. We therefore discern no error in the district court's denial of Clayton's motion to quash the bindover.

¶26 Affirmed.

————————